May it please the court, Cody Hosley for the plaintiff. I'd like to reserve three minutes for rebuttal, please, and focus my time on the attorney fee issue. I'm sorry, go ahead. I said watch your clock. Thank you. And focus my argument time today on the attorney fee issue. This court's cases have made clear that when a district court cuts a fee petition, the grounds for doing so must be based on logic, the facts, and a due regard to the fact that, in this case, the plaintiff won the case. That did not happen here. For example, the district court cut the fee petition, the Lodestar, by 75% on the ground that the plaintiff had recovered, according to the district court's estimate, 25% of the prayer. That kind of mechanical approach has been rejected by this court. That's not exactly what the district court said. The district court said the bulk of the time in phase two, which is where he made the cut, we're not talking about phase one now, was spent on unsuccessful theories, and witnesses were put on to prove theories that, in the end, the court didn't find successful. And therefore, he thought that the fee also ought to only cover the time spent urging the successful theory. And the Schwartz case seems to suggest that's enough. Tell me where Judge Simon fell short of that. Schwartz is a case where there was multiple claims that were unrelated, factually, to the winning claim. And in that context, you can just cut all the time spent on those unrelated losing claims. But as this court has made clear, and as this is a state court law governing the substantively fee petition, as the state cases also make clear, when there's a common factual nexus between winning and losing claims, you can't just cut every hour spent on a losing claim. Let me just test you on that. Let's assume that you have seven theories under which you would recover. And the first one takes an hour to prove and requires one witness. And the next six take seven weeks to prove and require 100 witnesses. And the judge says you were wrong on the next six, but you were right on the first one. Just focusing on trial time, you really get awarded all the time you spent on all the unsuccessful theories? You don't necessarily get awarded all of that time, but you don't have a mechanical cut. It says, well, you prevailed on the one claim, and they're out of the seven, and therefore you get seventh of your fees. And alternatively, you have to actually have a fact-based measurement of the time spent on the winning claim compared to the losing claims. And here, the 25% of your time was spent on the winning claim. That's not accurate as a factual matter. This court's made clear that you focus on what's the objection that the defendant made. Here, the defendant had a dyed-in-the-wool, 40-plus-years-experienced insurance defense lawyer go through line-by-line the fee petition, and he came up with a 13% cut, including for losing theories. And if you factor in that the defendant objected entirely to the fees on fees, that's a 20% cut that the defense was arguing for here on the ground. What would you have us do on this? Would you have us vacate the fee award and send it back to Judge Simon for a more detailed explanation? Well, and for an explanation that there was an error of law in the analysis. For example, in quarter, the court also said that if you have losing theories on a winning claim, you can't just cut every hour spent on a losing theory. Here, a lot of the cut was because two different types of damage that the plaintiff sought weren't awarded. And in quarter, the court made clear you can't just say, I'm going to cut all the time on your damages theories that didn't prevail on a winning claim. You need to, as the court and the Oregon courts have said, award the plaintiff all the fees reasonably incurred to achieve the success in litigation. Phase two alone was four years of hard fought litigation with liability hotly contested, causation, damages all hotly contested, and the plaintiff won a verdict of over $300,000. That's a substantial sum of money by any measure. And you can't just say, well, you didn't win all your damages, and you spent, I thought, about this much time on a gut feeling. This court said gut feelings and guesstimates by the court are not sufficient. And so it's not just merely district court didn't give a sufficient explanation for the cut, but the district court's rationale rested on the informal basis under this court's case law and that of the Oregon courts. Likewise, with the modifier, or the multiplier, I mean, the court said in phase two, the contingency fee factor was neutral, but it cannot be neutral under Oregon law, which differs from federal law in this regard. When there's no other factor supporting a multiplier, just a contingency factor, the court awards the multiplier. And the court recognized... I take it on that issue, your argument in some ways is we should treat the trial as a whole. The bifurcation was orders with Spontae over... I think that's probably right. If you treated the trial as a whole, the multiplier would apply. And that leads me to question the topics you didn't start out on. One of the reasons the rest of the stuff is a little confusing is there are interlocutory orders, but there's only one final judgment in this case, right? That's right. So that along the way, the judge may have said, well, you owe him a million dollars in the policy, or there will be an award of consequential damages, or there will be an award of increases. But the actual judgment, there's only one judgment. So if we treated this all as one trial, it just occurred along the way, how does that affect your arguments with respect to prejudgment interest on the consequential damages? On the phase two damages? Right. Yeah, because what would have happened was you simply would have gotten this award at the end. And they didn't know how much it would cost to pay it. They didn't even know if you'd get them. That's right. If the case had not been bifurcated that way... Why does the bifurcation change? I guess my question is stumbling towards it. Why does the bifurcation change our analysis of those issues? Why don't we just treat this as if this were one trial and a final judgment was entered at the end of it? As to that issue, the fact of the matter is it was bifurcated, and you have to look at when could it have been reasonably ascertainable that this money should have been paid. Because it was bifurcated and because the consequential damages, at least the interest portion of the consequential damages was paid in February of 16. The judgment wasn't entered until 2020. You do have that interest running on that amount. That's what I don't understand, and that's why I ask the question. The interest on the $1 million on the policy limits was meant to cover your loss of the use of that million dollars until paid, right? Yes. And you were paid. Thereafter, you had the use of that million dollars. So I don't see why you get interest twice. We have additional arguments as well in the case. Well, let me hear them. Yeah. Well, I mean, on other issues as well. On that issue, if I may stand on the briefing on that issue, I don't mean to dodge your question, but if that is not the theory that we have that is convincing for you, we do have other arguments on this appeal as well. So, for example, on the multiplier, with regard to… No, that's a separate issue, and I understand your argument. But I take it you don't want to say anything more about prejudgment? On that particular argument that you raised, I don't think I have a rebuttal to your argument. I think the fact of the matter is this was a bifurcated case, and so I don't think on the interest… But you don't dispute that you were paid the million dollars much earlier than the judgment? No. And that you had the use of it, or use of the million dollars thereafter? Yeah, the money was paid. The million dollars was paid four years approximately before the judgment was entered in the case. Yeah, and I assume… You distinguish, right? You have a separate argument as to prejudgment interest on the phase two damages. Well, this interest portion from the million dollars is one portion of the phase two damages, for which there was an argument that there should be prejudgment interest on that interest, essentially, and then also that there should be prejudgment interest on the phase one litigation costs as well. So I understand. You're resting on the brief on whether there should be prejudgment interest on that interest and prejudgment interest on the consequential damages between the expert witnesses? If I may, yes. Okay. Thank you. Let me ask you a question about the phase two litigation expenses, and I'm going to refer to them as expert witness fees. So one of the damages in phase two, one of the bad faith damages, was you had to spend a whole lot to bring experts into the phase one trial in order to prove that you were entitled to the million dollars that USA would pay you. And so that was a consequential damage that was awarded in phase two. But what is the theory under which you get litigation expenses that are ordinarily not awardable for your phase two litigation expenses? This has to do with the state statute, the ORS 746-230, which prohibits the defendant from compelling the plaintiff to initiate litigation. And by dint of the fact that the defendant here was found to have compelled the plaintiff to bring litigation, that is entitling the plaintiff to the consequential damages, which inherently includes litigation costs. But if this were just a regular case that involved an expert witness, you wouldn't be entitled to those litigation expenses as a recovery, would you? In a typical personal injury case, you wouldn't. But here we have a statutory claim, and the argument is that under this statute, you do get the expert witness fees and other litigation costs. You agree with the judge that they're not taxable costs. Correct, correct. Your argument is that they're consequential damages. Exactly. These are not the kind of thing that falls under a verified cost bill. This is consequential damages. Counsel, did you want to save three minutes? I did, please. Thank you. All right. Then we will hear from opposing counsel, Mr. Kastan. Good morning, your honors, and may it please the court. My name is Joshua Kastan, and I represent Appalee USAA Casualty Insurance Company in this case. The court's rulings below were sound. They were factually and legally appropriate. And we would ask this court, even though USAA, my client, disagreed and opposed the relief ultimately provided to the appellant here, we would ask the court to affirm it at this juncture. Mr. Kastan, as I understand what happened below, when this attorney's application was submitted, USAA only contested $84,000, give or take, of what was requested by the plaintiff in a total request of several hundred thousand dollars. To what extent should the judge have been guided by the objections, as opposed to undertaking on his own to cut the fees substantially more than the defendant had suggested? Thank you for that question, Judge Bolton. And I would say that, yes, we did oppose the appellant's Phase 2 fees petition more on an hour-by-hour basis, as opposed to the district court's determination, which was within its discretion under the Ninth Circuit case law, to instead just look at a more holistic approach, not go with an hour-by-hour assessment. Because, Judge Simon said in his order on the Phase 2 petition, the appellant's hours and documentation supporting those hours were so massive, so voluminous, so disorganized. He exercised his discretion, Judge Simon did, in going down the second path, so to speak, instead of the hour-by-hour path. He instead went on the more holistic, let's look at the entirety of it, and just take a haircut, so to speak, off of those hours in its totality. I don't think, Your Honor, that Judge Simon was limited to just the arguments that we raised in opposition to appellant's Phase 2 fees. I think the court had to take it upon itself, under all of the information presented to it, to assess in its determination what, under the Oregon statute controlling the recovery of reasonable attorney's fees, what was actually reasonable for appellant's counsel to recover in Phase 2. Doesn't our case law say that typically the judge should be guided by the defendant's objections? And I think, to some extent, how I read Judge Simon's order, Your Honor, I think he was guided by it. We objected to various bases, the reasonableness over all of the fees, and he took it a step further. I don't think there's anything in the case law preventing him from taking it a step further because he specifically stated why he did that. But you agree that you never suggested a reduction above the 75%? That's correct, Your Honor. We opposed the multiplier at every juncture, but we did not go so far as to oppose on a 75% basis. Counsel, have you ever seen a 75% so-called haircut before? Isn't that highly unusual? It may be unusual, Judge Wardlaw. I think Judge Hurwitz was spot on earlier when he pointed to the Schwartz v. Secretary of Health and Human Services case. That is a case, I believe, from the mid-90s from this court where this court approved and authorized the 75% haircut there. I think that is pretty close to the fact pattern that this case presents today at this court. Well, let me push back a little bit on that because my comment was made as a question, not as a position. How do we review the district court's order here, at least in Schwartz? We could look at it and say you had four different claims for relief. Three of them might have gotten different relief than the other. You didn't prevail on three of them. So we can review that and say the judge didn't abuse his discretion by only awarding the fees he felt were incurred with one. How do we review the order here? How can I tell where the hours were spent and whether or not the three losing theories consumed more hours than others? There is no really good basis for me to dig into the record and try to review it. I think the first, a couple of points, Your Honor. The first point I would say is Judge Simon lived with this case for several years. He was intimately involved. He controlled the case. He's a terrific judge. All terrific, but we still have to review his rulings. Totally understand. I didn't mean to interrupt the court. How do I look at this and determine whether or not 75% is even roughly the right number? I think first I would look at all of the claims presented by the appellant below in her various iterations of her complaint. Overall, she asserted by the end five different claims. Only on one of those claims was she actually successful. She submitted a vulnerable person claim under Oregon statutory law that was dismissed. She submitted a breach of express contract, saying that my client breached the insurance contract under express terms. Not only did she lose that, but the court below actually entered summary judgment in my client's favor on that claim. At the end of the day, didn't the plaintiff in this case recover, under whatever theory she eventually recovered, at least all the money she sought? She sought, and actually in her briefing, Your Honor, she's now seeking a lot more. She was seeking interest in other things, but at least in terms of trying the case. Prevailing on one theory gave her complete relief, did it not? Prevailing on her, to take a step back if I may, Your Honor, this is an uninsured motorist case at its core. And so I think everything needs to be viewed through that lens. So to answer Your Honor's earlier question as to bifurcation and sort of what was the impact of that, we have to first look at what is the value of the damages that Ms. Foraker was legally entitled to recover from the tort visa that caused the accident. That was phase one. In phase two, which ultimately went to a separate trial in 2019, the issue there was, did my client breach the implied covenant of good faith and fair dealing in handling Ms. Foraker's insurance claim, not on a tort basis as it is in most other states, but Oregon only allows that on a contract basis. I understand that, and it confused me a little bit because in Arizona it's a tort basis. But my question is still, so she prevails on her claim under the U.N. policy, and she prevails on her bad faith claim. If she instead had prevailed on any of the other theories or claims, would she have recovered any more money than she did in this case? Yes, she was seeking statutory damages, Your Honor, under the vulnerable person claim. She was seeking additional damages for non-economic damages under her negligence per se claim that was also dismissed. And she was seeking additional damages on her breach of implied covenant claim in phase two that Judge Simon did not award, such as additional non-economic damages and additional economic damages, including, to Judge Bolton's earlier point, the expert costs as consequential damages there. Can you focus on that for a second because that confuses me. The judge awarded consequential damages on phase one in terms of expert witnesses. So yes and no, and here's why. So Judge Simon, as part of their phase two economic damages, and not to speak for appellant, but I've lived with this case for many years, Your Honor, so I realize the record is voluminous, but this is how I understand it at least. As far as their phase two economic damages, they claimed as consequential damages from phase one, their expert costs in litigating and proving up their UIN claim in phase one. However, and Judge Simon awarded that as part of his phase two judgment after the phase two trial. However, as for the phase two experts, they had, for example, a claims handling expert that was not involved in phase one. Those are non-recoverable costs, just like in any other case. I understand that's the way the judge rules. I'm trying to figure out why, so help me with that. Why aren't these consequential damages from your bad faith? They wouldn't have had to put on these experts in phase two had you not engaged in bad faith. Well, I think two reasons, Your Honor. First is I don't think they were foreseeable at the time the contract was entered into, which because this is a contract claim and not a tort claim, it has to be viewed through that lens. And secondly, I don't think that they sufficiently met their burden at the phase two trial to prove up those damages was sufficient that Simon could rule as the trier of fact and determine as the trier of fact. I'm still having difficulty, and you must know more than I do. So help me on this. I don't think that's true. Expert witness fees were incurred in phase two. Yes? Incurred but not recoverable, yes. Yes. Okay. They were incurred. The reason they were incurred was because you forced them to litigate the case rather than simply pay the $1 million that the policy that the judge eventually found you should have paid them to the policy, right? I don't think that Judge Simon determined, Your Honor, that we forced Ms. Foraker to litigate the case. I think he found overall that the claims handling was unreasonable to such an extent that he believed as the trier of fact that my client breached the contractual implied covenant of good faith and fair dealing. But surely you forced her to litigate the case. You only offered her $250,000 for a claim that the court found, as a matter of fact, was worth a million. So what was he supposed to do? And that's where Judge Brown's order granting summary judgment on plaintiff's breach of contract claim, I think, plays into it. Because Judge Brown found in granting our motion for summary judgment on that breach of contract, the express contract claim, that Ms. Foraker had short-circuited the claims process by not responding and essentially just jumping to suit after my client made its initial offer pre-litigation. Didn't she file it within days of the expiration of the statute of limitations? She filed it, Your Honor, I believe in December of 2013 prior to the expiration of the statute of limitations. However, offers were made months before that by my client and Ms. Foraker never responded to those offers. And so I would direct the court to Judge Brown's order granting our motion for summary judgment, where I think she lays out in a very sort of succinct way how Ms. Foraker, from Judge Brown's perspective, had short-circuited the claims process. Does this Oregon statute that Plaintiff's Counsel cited, 46-230, change the rule about expert witness fees being recoverable? No, Your Honor. And I have yet to see any case from Oregon or any federal court interpreting Oregon law that allows that. Unlike other states, that statute, which enumerates the regulations essentially for the standards of unfair claims handling, it does not provide any insured with a private right of action against an insurance carrier. So what the Oregon cases say is that these can all sort of be mixed into the mix of considering whether a carrier has breached the contractual implied covenant of good faith and fair dealing. But any one of them alone, with the exception perhaps of subsection D, which is which the Ivanov v. Farmers case addresses, none of them alone can provide a basis for relief. And Plaintiff's claim was not a statutory claim. It was a breach of contract claim addressing the implied covenant of good faith and fair dealing. So if I take your argument at its face value, do you think that the court erred in awarding expert witness fees with respect to phase one? No, Your Honor. I do not. Okay, so explain to me why those expert witness fees were consequential damages. Those expert witness fees, Your Honor, were consequential damages because Miss Forger, it was all part in parcel with her claim that she was owed the million dollar policy limits under her uninsured motorist contract. And so looking at what she had to do to prove those damages in phase one, those expert fees from phase one, I think, are completely separate from the more nebulous claim that she made in phase two as to the breach of the implied covenant. Well, it's not more nebulous. She actually won it. It's not based on the policy limits, is what I meant, Your Honor. Let me rephrase your argument and see if you agree with me because until now I had trouble understanding. What you're saying is that when an insurance company doesn't pay the amount that they should, then it's foreseeable that you'll have to incur costs in litigation to prove what you're entitled to. But it's not foreseeable from that breach of contract that you'll also have a bad faith claim. Is that is that a sort of a summary of the way of your point? Yes, Your Honor. Okay, now I understand this is helpful. Thank you. Thank you all for your time. And we would ask that the court affirm the court below. Thank you, counsel. Mr. Hoseley, you have three minutes, close to three minutes. Thank you. On that last issue that we were just discussing, I don't understand how from defendant's perspective, a plain vanilla failure to pay the million dollars that is owed warrants attorney fees. But a bad faith failure to pay a million dollars doesn't get you. It doesn't get you the expert witness fees. I don't think you can distinguish. So let me ask you the opposite of the question. I take it that because Oregon treats this bad faith as a breach of a contract, not as a tort. It is foreseeable that if one breaches the duty of good faith and fair dealing, the insured might incur expert witness fees. It's the ordinary course of events. That's restatement 351 that Judge Simon quoted in his opinion. That's just the ordinary course of events. Any reasonable person can see that. Exactly. And I don't think you can distinguish the phase one expert fees versus the phase two expert fees on this basis. Especially when the phase two was just really about saying in phase one, your conduct was not just wrongful, but it was in bad faith. All the more so phase two expert costs would be awarded. Another point I wanted to make is a lot of time was spent on this motion for summary judgment that was kicking out a contract claim during phase one. All of that came out. That was part of the phase one petition. That's not that wasn't in phase two. And moreover, the chief reason why the defender wanted that motion was because they paid the plaintiff before the judgment was entered. And so they admitted their loss so quickly that no judgment could be entered on that claim. If I may focus on this bad faith factor, it's important also because one of the grounds that the district court did not award a multiplier is because the pre-filing conduct did not continue during the litigation. But of course, it did not continue during litigation. This is a factor that focuses only on what happened before the litigation. And in phase one, the court found that that favored a multiplier simply just on the mere fact that the million dollars wasn't paid on time. In phase two, the court specifically found that that was done in bad faith. All the more so reason then that this same factor counsels in favor of a multiplier in phase two. There's no logic in saying that somehow in phase one, it supports a multiplier, but not in phase two. And I just really want to emphasize that when you're making a fee cut, it has to be based on logic and the facts. And that wasn't the case here with the district court's fee ruling. And for all the other reasons we've explained in our briefs, we urge a reversal in this case and leave him. Thank you very much. All right. Thank you, Counsel. Foraker versus USA, a casualty insurance company will be submitted.
judges: Wardlaw, Hurwitz, Bolton